## Elmer Smith et al. v. Delia Lemieux.

1. TRESPASS—*Selling Property of Wrong Person to Satisfy Chattel Mortgage.*—The husband of plaintiff, who was accustomed to act as her agent in the management of her farm, made a chattel mortgage on grain belonging to plaintiff, to secure notes given by him and another party. Before the mortgage was due and before any default defendants entered upon plaintiff's land, seized the grain and sold it under the mortgage. *Held*, that the acts of defendants were a willful trespass.

**Trespass upon Real Property.**—Appeal from the Circuit Court of Kankakee County; the Hon. JOHN SMALL, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 27, 1903.

W. H. SAVARY and A. E. SMITH, attorneys for appellants.

W. G. BROOKS and H. K. & H. H. WHEELER, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action of trespass brought by appellee against appellants. Appellee was the owner of a farm in Kankakee county, the record title being in her name. She was a widow with six children, and her husband, Adolph Lemieux, a widower with two children, at the time they were married. They all lived and worked together on her farm as one family. In the fall of 1901 the husband, Adolph Lemieux, temporarily went to Minnesota to run a threshing machine, leaving appellee and the children on the farm. Before he went away from the state Adolph Lemieux, together with one Horace Belanger, borrowed of appellants Watson & Templeton, who were in business as merchants and grain buyers at Hopkins Park, two and one half miles from appellee's farm, $450, for which they gave their promissory note dated September 3, 1901, due four months after date. To secure said note the makers gave a chattel mortgage upon certain crops, which included one hundred acres of corn growing upon the farm owned by appellee. Some time after the departure of the husband, appellee had a portion of the corn husked and cribbed on the place. In November 1901, after the corn

above mentioned had been cribbed, Watson & Templeton placed their chattel mortgage in the hands of appellant Elmer Smith to be foreclosed. Smith demanded payment of appellee, which was refused, and on November 22, 1901, went to the appellee's farm to take possession of the corn. She and her brother, John Goyette, and son-in-law, William Billings, refused to let Smith take the corn and offered some resistance, until the latter threatened to have them all arrested and put in jail. Appellee and those assisting her then offered no further resistance, and Smith, with the assistance of Templeton and in the presence of Watson, who stopped in the highway near the gate and watched the proceedings, broke open the crib and had the corn removed to Hopkins Park. Watson & Templeton afterward took possession of the corn remaining in the field by writ of replevin and had it husked and hauled away. The corn taken by appellants, estimated at from six hundred to nine hundred bushels, was sold under the mortgage, to Watson & Templeton, for $100. Out of this amount the costs, amounting to $82.35, were paid, and Adolph Lemieux was given credit for the remainder, $17.65, upon his note. At the time of the sale corn was worth in Hopkins Park from fifty to sixty cents a bushel.

Afterward, on December 14, 1901, appellee brought this suit in trespass against appellants, and the trial resulted in a verdict and judgment in her favor for $790.

Appellants complain that the court improperly gave instructions 1, 3, 4 and 5 offered by plaintiff, and that the verdict was not sustained by the evidence. The first, third and fourth instructions stated well-settled principles of law in regard to the rights of a married woman to avail herself of the services and agency of her husband in business matters. The objection to the fifth instruction was that it authorized punitive damages, and that, under the evidence, this doctrine should not apply to all the defendants, for the reason that they did not all take part in the trespass. It appeared from the evidence, however, that all the defendants were present and took part in the trespass. The instruction was therefore properly given.

The record also shows there was a trespass committed by appellants, that the injuries complained of were willfully inflicted, and that the evidence was in all respects sufficient to sustain the verdict. The judgment of the court below will be affirmed.